**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DARIOUS PHILLIPS,**<br><br>**Defendant.** | **Case No. 25-MJ-164** |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

On August 22, 2018, Defendant Darious Phillips escalated a verbal argument with a man at a gas station by producing a handgun and firing several shots at the man, striking him as he ran away. The man suffered gunshot wounds to his left arm, abdomen, and right buttocks, and required surgery and an extended stay in the Intensive Care Unit. As a result of his criminal conduct, Phillips pleaded guilty to Aggravated Assault while Armed in 2018. He was sentenced to five years in prison and five years of supervised release, which commenced upon his release from custody in March 2023.[1] Unfortunately, nearly seven years to the day that he shot and seriously wounded another human being, Phillips demonstrated that his prison sentence and ensuing supervised release had not deterred him from walking around the District of Columbia with firearms. On the contrary, last Thursday, August 21, 2025, while running from police, Phillips tossed to the ground a Masterpiece Arms model Mac9, semi-automatic pistol with an extended magazine. It was loaded with 19 rounds of ammunition, including one in the chamber. Yet his instant federal arrest is actually the *second* time that the Defendant has possessed a loaded firearm while on supervised release. The Defendant was under indictment for Unlawful Possession of a Firearm in D.C. Superior Court stemming from a October 2024 offense in which he once again carried a loaded semi-automatic firearm in the District of Columbia and only managed to evade

1 The March 2023 release date is based upon information from the Bureau of Prisons' Inmate Locator.

arrest by surreptitiously giving the firearm to another woman with whom he was walking after.

Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, the defendant should be detained pending trial.

**BACKGROUND**

At approximately 8:30PM on August 21, 2025, members of MPD's Robbery Suppression Unit and other law enforcement agencies were patrolling the 4000 block of South Capitol Street, SW, which is in Patrol Service Area 708, a PSA which has had 22 violent crimes reported over the last six months, including three homicides. Law enforcement offers were in marked and unmarked cars. Phillips was walking northbound on South Capitol Street with a woman when he appeared to notice the cars. He then pulled the woman he was with closer to his person, placed his right hand into his right jacket pocket, and made a downward pushing motion. Defendant Phillips then started walking at a faster away at a faster pace. When two law enforcement officers got out of their car, Phillips immediately started running northbound on South Capitol Street. As he was running, law enforcement agents saw Phillips remove a black firearm with an extended magazine and hold it in his right hand while running in the middle of a public sidewalk. He then made a tossing motion and continued to run.

Once he was apprehended – without any identification or a cell phone – law enforcement officers canvassed the flight path where he was observed making the tossing motion. Police

recovered the firearm in the Defendant's flight path approximately two minutes after the pursuit just feet away from where the Defendant had been running.







**Figures 1 and 2 – Snippets from Officer Body-Worn Camera**

More specifically, the firearm the Defendant possessed was a Masterpiece Arms model Mac9, semi-automatic pistol, which was chambered with one round of 9mm ammunition and 18 additional rounds in a high-capacity magazine.




**Figures 3 – MA Mac9**

**ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).

**I. <u>The Nature and Circumstances of this Offense Merits Detention.</u>**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. At the time of his arrest, the defendant was walking around the District with a loaded firearm. Although the offense charged is a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at *7. This Court also has found that just one such gun poses a danger to the community, *see United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public), especially a firearm loaded with a round in the chamber, as was the case here. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because

"the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling."). Accordingly, this factor weighs in favor of detention.

## II. The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[2] The Government's case against the defendant is quite strong. Phillips ran from police when it was clear that officers were trying to contact him. As he was running from officers who were pursuing him on foot, two different officers who were driving parallel to Phillips saw him remove what they recognized to be a black firearm with an extended magazine and hold it in his right hand as he was running. He was observed making a tossing motion, after which the firearm was no longer visible. After Phillips kept running, he ultimately was apprehended and officers located the black semi-automatic pistol with the extended magazine in a grassy area where Phillips had been running. Thus, the evidence is strong that Phillips possessed the firearm.

There is no question that the gun was loaded with 19 rounds of ammunition, including one in the chamber. There also is no question that Phillips was previously convicted of an offense for which the penalty was greater than one year and that he *knew* that he was convicted of such an offense given that he was sentenced to five years of imprisonment for shooting a man seven years earlier.

Because the government's evidence is strong, this factor weighs in favor of detention.

---

[2] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194 at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

**III. <u>The Defendant's History and Characteristics Merit Detention.</u>**

The third factor, the defendant's history and characteristics, likewise favors detention. The defendant's predicate felony is a particularly violent one. Defendant Phillips shot a man after they were engaged in a verbal altercation at a gas station while congregating around a gas pump with the defendant's friends. *See* Exhibit 1 (Signed Proffer of Facts). He also committed the instant offense while on supervision for the shooting. His willingness to walk around the District of Columbia with a dangerous loaded firearm while on supervision for his Aggravated Assault while Armed conviction shows that he is a danger to the community and that he is unlikely to abide by pretrial release conditions in this case.

And as stated above, this is the Defendant's *second* instance in which he possessed a loaded firearm in the District of Columbia while on supervision. The Defendant was indicted in July 2025 in D.C. Superior Court for possessing a firearm in October 2024. In that instance, On October 9, 2024 around 9:30 pm, Sergeants Davies and Decker with MPD responded to a ShotSpotter detection in the are of 504 Lebaum Street SE Washington DC. Upon arriving at the location, Sgt. Davies was provided a lookout for a man and a woman with a baby stroller. Sgt. Davies then turned onto MLK Jr. Ave and near the intersection of MLK Jr. Ave and Mellon Street they saw a man (Darious Phillips) and a woman (Danielle Snowden) pushing a baby stroller.

As the sergeants approached, Phillips separated from Snowden and the baby stroller and walked at a hurried pace in the opposite direction. The Sergeants exited their cruiser and followed Phillips to initiate contact. Phillips consented to a pat down, and the officers did not locate anything. Phillips did not provide his name to and Phillips left and continued down the street.




**Figure 4 – Snippet from Officer Body-Worn Camera**

The sergeants then caught up to Snowden who was still pushing the stroller. When Sgt. Davies approached, he asked Snowden if the man she was just with had given her a gun. Snowden stated that he did not. While speaking with Snowden, Sgt. Davies observed the grip of a pistol in

Snowden's unzipped front left jacket pocket.



**Figures 5 – Photograph of Defendant Snowden**

Officers placed Snowden into handcuffs and recovered the pistol from her jacket pocket. Snowden proceeded to tell officers that her baby's father, Darious Phillips, put the gun in her jacket pocket and that she does not carry guns. She further stated she did not know the object he gave her was a gun because things were happening too fast. The recovered firearm was a Polymer 80 ghost gun loaded with 7 rounds in a 12 rounds magazine and 1 round in the chamber.




**Figures 6 – Photograph of Firearm from October 2024 Offense**

An MPD surveillance camera from the intersection of MLK Jr. Ave and Mellon St. recorded a portion of these events. *See* Ex. 2. The footage shows a man and a woman walking together with a stroller. They appear to be Snowden and Phillips based on their clothing, hair, and builds. In that video, Phillips appears to give a dark colored object to Snowden just prior to walking away from her and then, interestingly, immediately afterward, begins taking off the red sweatshirt he had been wearing and which officers later observed him carrying in his hand. This occurs at 9:42 in the surveillance footage. At 9:44, the officers can be seen traveling down Mellon Street to catch up to Snowden.

While Snowden was arrested on scene, Phillips remained at large and could not be apprehended that evening. He was eventually identified based on investigators review of the footage from that evening as well as body-worn camera footage from a separate incident in March 2025. Phillips was indicted a Superior Court grand jury in July 2025 for Unlawful Possession of a Firearm (Prior Conviction); Carrying a Pistol Without a License (Outside Home or Place of

Business); Possession of a Prohibited Weapon; Possession Of Unregistered Firearm; and Unlawful Possession Of Ammunition).

**IV. The Defendant Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention. As noted above, even though he knows firsthand the danger of carrying a loaded firearm in the District and had every incentive to comply with the law given that he was on supervised release for a violent felony, Phillips chose to double down on walking around the District with a loaded firearm. This was, of course, Phillips's second time walking around the District of Columbia with a loaded firearm while apparently undeterred by being on supervised release. In the first instance, he also possessed a loaded, semi-automatic pistol while walking around the District, in circumstances that are deeply concerning, with officers responding to sounds of shots fired, witnesses saying a man and woman with a stroller were involved, and then Phillips handing a loaded firearm to the woman with the stroller, while attempting to change out his clothing. Defendant's past conduct demonstrates that not even court-ordered supervision is sufficient to prevent him from carrying around loaded firearms in the community.

**CONCLUSION**

The government respectfully requests that the Court issue an Order granting its motion that defendant Darious Phillips be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

WILL HART
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia
D.C. Bar No. 1029325
601 D. St., N.W.,
Washington, D.C. 20530
William.hart@usdoj.gov
(202)-252-7877